01

02

03

04

05                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
06                           AT SEATTLE

07   MARINA HILDINGER-LOPEZ,              )   CASE NO. C07-0270-JLR
                                          )
08          Plaintiff,                    )
                                          )
09          v.                            )   REPORT AND RECOMMENDATION
                                          )   RE: SOCIAL SECURITY
10   MICHAEL J. ASTRUE,                    )   DISABILITY APPEAL
     Commissioner of Social Security,     )
11                                        )
            Defendant.                    )
12   _____  )

13          Plaintiff Marina Hildinger-Lopez proceeds through counsel in her appeal of a final decision

14   of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

15   denied plaintiff's application for Supplemental Security Income (SSI) benefits after a hearing

16   before an Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the

17   administrative record (AR), and all memoranda of record, it is recommended that this matter be

18   AFFIRMED IN PART and REMANDED IN PART for further administrative proceedings.

19   / / /

20   / / /

21   / / /

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02 Plaintiff was born on XXXX, 1956. [1] She has completed the ninth grade. [2] Plaintiff

03 previously worked as a deli worker, a life guard, a home care worker, and a volunteer fire fighter.

04 Plaintiff filed her SSI application on May 30, 2003, alleging disability since December 9,

05 2002. (AR 16.) Her application was denied at the initial level and on reconsideration, and she

06 timely requested a hearing. On January 24, 2006, ALJ Wayne N. Araki held a hearing, taking

07 testimony from plaintiff. (AR 15.) The ALJ issued a decision finding plaintiff not disabled on

08 April 27, 2006. (AR 15-25.)

09 Plaintiff timely appealed. The Appeals Council denied her request for review on January

10 24, 2007, making the ALJ's decision the final decision of the Commissioner. (AR 6-9.) Plaintiff

11 appealed this final decision of the Commissioner to this Court.

12 **JURISDICTION**

13 The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

14 **DISCUSSION**

15 The Commissioner follows a five-step sequential evaluation process for determining

16 whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

17 be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

18 engaged in substantial gainful activity since her alleged onset date. At step two, it must be

19 ───────────────────────

20 [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
21 official policy on privacy adopted by the Judicial Conference of the United States.

22 [2] (*See* AR 107; *but cf.* AR 16 (the ALJ's decision states that plaintiff has only an eighth
grade education).)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01 determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

02 peripheral neuropathy and affective disorder severe.  Step three asks whether a claimant's

03 impairments meet or equal a listed impairment.  The ALJ found that plaintiff's impairments did not

04 meet or equal the criteria for any listed impairment.  If a claimant's impairments do not meet or

05 equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine

06 at step four whether the claimant has demonstrated an inability to perform past relevant work.

07 The ALJ assessed plaintiff's RFC and found her unable to perform any past relevant work.  If a

08 claimant demonstrates an inability to perform past relevant work, the burden shifts to the

09 Commissioner to demonstrate at step five that the claimant retains the capacity to make an

10 adjustment to work that exists in significant numbers in the national economy. Using the Medical-

11 Vocational Guidelines (Grid) as a framework at step five, the ALJ found plaintiff capable of

12 performing jobs existing in significant numbers in the national economy, including work as a

13 semiconductor bonder, a callout operator, and a charge account clerk.

14        This Court's review of the ALJ's decision is limited to whether the decision is in

15 accordance with the law and the findings supported by substantial evidence in the record as a

16 whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

17 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

18 mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

19 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

20 decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

21 2002).

22        In the order presented in plaintiff's opening brief, plaintiff's arguments are that the ALJ

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01 erred by: (1) mechanically applying age categories in a borderline situation; (2) relying on the

02 vocational expert (VE)'s testimony at step five even though it departed from the Dictionary of

03 Occupational Titles (DOT) for the jobs identified; (3) failing to evaluate the 2005 opinions of

04 treating rheumatologist Dr. Slack; and (4) incorrectly finding that plaintiff did not have a severe

05 musculoskeletal condition.

06      Plaintiff seeks remand for an award of benefits or, alternatively, for further administrative

07 proceedings.   The Commissioner argues that the ALJ's decision is supported by substantial

08 evidence and should be affirmed.   For the reasons described below, the Court finds the matter

09 should be affirmed in part and remanded in part for further administrative proceedings.

10                          Age Categories in a Borderline Situation

11      Plaintiff argues that the ALJ erred by mechanically applying age categories in a borderline

12 situation.  Plaintiff highlights the two factors necessary for a claimant to qualify for borderline

13 consideration: (1) claimant must be within a few days to a few months of reaching an older age

14 category, and (2) using the older age category would result in a determination or decision that

15 claimant is disabled.  20 C.F.R. § 416.963(b) (2007).

16      Plaintiff draws attention to the fact that her age, at the time of the ALJ's decision nearly

17 three years after she applied for SSI benefits, was forty-nine years and ten months.  Plaintiff

18 observes that the ALJ applied the age category of "younger person" (under age 50), but that at

19 forty-nine years and ten months, she was within a few months of reaching the older age category

20 of "person closely approaching advanced age" (age 50-54).  Plaintiff notes that if the ALJ had

21 used the "person closely approaching advanced age" age category instead of the "younger person"

22 age category, Grid Rule 201.10 would have applied and directed the decision that she is disabled.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01 Plaintiff argues that the ALJ should have acknowledged the borderline situation and that he should

02 have elaborated on his reasons for choosing the "younger person" age category over the "person

03 closely approaching advanced age" age category.

04       The Commissioner responds that, although a borderline situation did arise by the time of

05 the ALJ's decision, plaintiff was not in a borderline situation for most of the period under

06 consideration, and, therefore, the ALJ's classification was proper.

07       Plaintiff replies that the Commissioner has proposed a "most of the period" exception to

08 the borderline rule.  Plaintiff argues that such an exception is not justified by legal authority,

09 contravenes the plain language of the regulation, and would emasculate the rule.

10       The borderline rule states as follows:

11       *How we apply the age categories.*  When we make a finding about your ability to do
         other work under § 416.920(f)(1), we will use the age categories in paragraphs (c)
12       through (e) of this section.  We will use each of the age categories that applies to you
         during the period for which we must determine if you are disabled.  We will not apply
13       the age categories mechanically in a borderline situation.  If you are within a few days
         to a few months of reaching an older age category, and using the older age category
14       would result in a determination or decision that you are disabled, we will consider
         whether to use the older age category after evaluating the overall impact of all the
15       factors of your case.

16 20 C.F.R. § 416.963(b) (2007).

17       The Commissioner's proposed "most of the period" exception to the borderline rule is not

18 supported by the regulations or any other case authority.  Although a particular result is not pre-

19 ordained in a borderline situation, the ALJ must, at a minimum, acknowledge and assess the

20 borderline situation.  *See*, *e.g.*, *Young v. Barnhart*, 287 F. Supp. 2d 905, 913 (N.D. Ill. 2003)

21 ("While we do not instruct the ALJ to select a particular age category, we remand this case to the

22 ALJ for a borderline age analysis as required in 20 C.F.R. § 416.963").  Therefore, the ALJ should

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01 | perform a borderline age analysis upon remand.

02 | <u>DOT's Definition of "Sedentary"</u>

03 | Plaintiff argues that the ALJ erred by relying on the VE's testimony at step five even

04 | though it departed from the DOT for the jobs identified.  Plaintiff acknowledges that the ALJ

05 | followed proper procedure, as required by Social Security Ruling (SSR) 00-4p, by inquiring as to

06 | whether the VE's testimony conflicted with the DOT.  *See Massachi v. Astrue*, 486 F.3d 1149,

07 | 1152-1154 (9th Cir. 2007).  Plaintiff asserts that SSR 96-9p provides a definition of "sedentary"

08 | which should govern the interpretation of the DOT's usage of "sedentary," and that SSR 96-9p's

09 | definition requires the ability to sit for two hours at a time.  The RFC limitations posed by the

10 | ALJ's hypothetical, on the other hand, were more restrictive and required the ability to sit for only

11 | one hour at a time.  Plaintiff asserts that, therefore, the VE incorrectly testified that the three jobs

12 | satisfied the sitting limitation posed by the ALJ's hypothetical, since the jobs are classified in the

13 | DOT as "sedentary," and thereby, required the ability to sit for two hours at a time.

14 | The Commissioner responds by distinguishing the DOT's general definition of "sedentary"

15 | found in Appendix C of the DOT from the more specific definition of "sedentary" found in SSR

16 | 96-9p.  The Commissioner argues that the ALJ's hypothetical limitations did not depart from the

17 | DOT's definition of "sedentary."  Furthermore, the Commissioner contends that while SSR 96-9p

18 | defines the full range of work which could be included in the "sedentary" occupational base, the

19 | ALJ found plaintiff's RFC limited her to less than the full range of "sedentary" work.  The

20 | Commissioner argues that, accordingly, the ALJ's hypothetical reflected plaintiff's RFC

21 | limitations, and that the ALJ properly relied on the VE's testimony in response to his hypothetical.

22 | The ALJ found that plaintiff's RFC allows her to "sit for 60 min intervals for an 6-8 hour

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01  day with routine workplace break and stretch breaks." (AR 24.) The ALJ also acknowledged that

02  plaintiff's RFC does "not allow her to perform the full range of sedentary work." (AR 25.)

03  Therefore, the ALJ could not rely solely on the Grid rules to direct a decision, but rather had to

04  use the Grid as a framework. The ALJ consulted the VE and posed a hypothetical reflecting

05  plaintiff's RFC. (AR 560.) After the VE testified to three examples of jobs which would satisfy

06  plaintiff's RFC, the ALJ specifically asked whether those jobs would accommodate a sit/stand

07  option and the VE affirmed that they would.[3]  (AR 564.)

08  The DOT defines "sedentary work" as:

09  Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition
    exists up to 1/3 of the time) and/or a negligible amount of force frequently
10  (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry,
    push, pull, or otherwise move objects, including the human body.  Sedentary work
11  involves sitting most of the time, but may involve walking or standing for brief periods
    of time.  Jobs are sedentary if walking and standing are required only occasionally and
12  all other sedentary criteria are met.

13  DOT, Appendix C.

14  The DOT does not confine "sedentary" to jobs that require the ability to sit for two hours

15  at a time. The DOT only states that "[s]edentary work involves sitting *most of the time*." *Id.*

16  (emphasis added). Therefore, there is no conflict between the DOT's definition of "sedentary" and

17  the limited ability to sit for only one hour at a time. As such, the VE's testimony, that the three

18  "sedentary" jobs satisfied the ALJ's hypothetical, did not depart from the DOT. *See, e.g., Martin*

19  *v. Barnhart*, 470 F. Supp. 2d 1324 (D. Utah 2006).

20

21

22  [3] The sit/stand inquiry is not reflected in the ALJ's decision.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01    Neither did the VE's testimony conflict with SSR 96-9p's definition of "sedentary." The

02  guidance sections found in SSR 96-9p are used for determining when and by how much the

03  "sedentary" occupational base has been eroded. *See* SSR 96-9p.  The "sedentary" occupational

04  base is the full range of approximately 200 jobs contemplated by the Grid as unskilled sedentary

05  occupations. *See id.*  The occupational base is eroded when a claimant's RFC limitations are more

06  restrictive than outlined by the SSR 96-9p guidance sections. *See id.*  When the occupational base

07  has been eroded, it means that the claimant is unable to perform some, but not necessarily all, of

08  the approximately 200 unskilled sedentary jobs. *See id.*  Therefore, an eroded occupational base

09  does not direct a finding of disabled, but rather, requires an ALJ to consult a VE rather than

10  relying on the Grid rules to direct a decision. *See id.*

11    While the "sitting" guidance section of SSR 96-9p does identify "approximately 2-hour

12  intervals" for the suggested timing of the three official breaks (morning, lunch, and afternoon), the

13  only specific factor that the "sitting" guidance section indicates to be an erosion of the

14  occupational base is the total hours an individual is able to sit in an eight-hour work day.  But even

15  if we accepted plaintiff's argument that the occupational base was eroded by the plaintiff's RFC

16  limiting her to sitting for one hour at a time, the ALJ satisfied the procedural requirement of

17  consulting a VE.  Of the approximately 200 unskilled sedentary jobs, the VE's testimony identified

18  three which satisfied the ALJ's more restrictive hypothetical reflecting plaintiff's RFC.  The ALJ's

19  step five finding based on this vocational testimony was supported by substantial evidence and

20  should be affirmed.

21                                   Dr. Slack's 2005 Opinions

22    Plaintiff argues that the ALJ erred by failing to evaluate the 2005 opinions of treating

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01 rheumatologist Dr. Slack.  A treating physician's opinion may only be rejected with "clear and

02 convincing" reasons if uncontroverted, or "specific and legitimate" reasons if controverted. *Lester*

03 *v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  A specialist's opinion is generally given more weight

04 in his or her area of specialty than the opinion of a non-specialist.  20 C.F.R. § 416.927(d)(5)

05 (2007).  Dr. Slack has been plaintiff's treating rheumatologist since at least October 2002.  (AR

06 267-69.)  Plaintiff notes that Dr. Slack completed two state Department of Social and Health

07 Services (DSHS) Physical Evaluation forms in 2005, and that Dr. Slack's opinions of plaintiff's

08 RFC were more restrictive than the ALJ's findings.  (AR 509-12, 520-23; cf. AR 15-25.)  Plaintiff

09 argues that the ALJ did not evaluate, much less provide adequate reasons for rejecting, Dr. Slack's

10 2005 opinions, and that, therefore, they should be credited as true.  *See Lester*, 81 F.3d at 834.

11 The Commissioner responds that the ALJ properly evaluated all of Dr. Slack's opinions,

12 even if he did not discuss the 2005 opinions specifically.  The Commissioner argues that the ALJ

13 gave legally sufficient reasons for rejecting a short undated chart note from Dr. Slack.  (AR 281

14 (referred to as "Dr. Black" by the ALJ.  AR 22.))  Moreover, the Commissioner identifies various

15 reasons why the ALJ might have rejected Dr. Slack's opinions.

16 As Dr. Slack is a treating physician, the ALJ needed to provide adequate reasons, either

17 "clear and convincing" if uncontroverted or "specific and legitimate" if controverted, to reject Dr.

18 Slack's opinions.  While the ALJ does use some of Dr. Slack's earlier opinions as references for

19 some of his findings, his decision does not expressly refer to or reject Dr. Slack's 2005 opinions.

20 (*Cf.* AR 17 (citing to AR 241, 247), AR 18 (citing to AR 247) *with* AR 15-25.)  Dr. Slack's 2005

21 opinions do not appear to be contradictory of the ALJ's findings, but since the matter is being

22 remanded, the ALJ should also specifically address Dr. Slack's 2005 opinions upon remand.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01                           Musculoskeletal Condition

02          Plaintiff argues that the ALJ erred by incorrectly finding that plaintiff did not have a severe

03   musculoskeletal condition.  Plaintiff indicates that SSR 96-3p provides that an impairment will be

04   found to be severe if it causes more than a minimal limitation on a claimant's ability to perform

05   basic work activities.  Plaintiff notes two surgeries to treat a herniated disc, one of which was only

06   submitted as evidence to the Appeals Council, and one surgery to treat her left knee.  (AR 495;

07   AR 530; AR 398, 403.)

08          The Commissioner responds that it is plaintiff's burden to prove that her impairments were

09   severe and that an impairment is severe when it causes a significant limitation on a claimant's

10   ability to perform basic work activities.   The Commissioner asserts that a diagnosis of an

11   impairment does not prove that the impairment is severe, and that plaintiff's impairments improved

12   as a result of various surgeries.  (AR 17, 412, 415, 432; AR 18, 398, 552.)  The Commissioner

13   also contends that the ALJ properly found plaintiff not credible regarding the extent of her

14   impairments, averring inconsistencies in plaintiff's statements and between plaintiff's statements

15   and activities.  The Commissioner argues, moreover, that even if plaintiff's herniated disc and left

16   knee were accepted as severe impairments, there was no evidence that they further limited

17   plaintiff's RFC beyond what the ALJ determined it to be, and any error, if it existed, would be

18   harmless.

19          The ALJ's decision directly addresses both plaintiff's herniated disc and left knee,

20   commenting that plaintiff reported significant improvement in her symptoms related to her

21   herniated disc and left knee after surgery:

22          The claimant began complaining of back pain in early 2004.  In April of 2004,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  magnetic resonance imaging showed multilevel degenerative disc disease with small
    broad-based disc bulge at L5-S1, causing mild bilateral neural foraminal stenosis.  In
02  July of 2004, the claimant underwent a hemilaminectomy, microdiscectomy, and
    foraminotomoy in the lumbar spine.  By November of 2004, the claimant reported that
03  she was much better.  She reported that she was able to do all of the activities she
    wanted to do.  In January of 2005, she reported that she was doing well overall.  She
04  reported that her back had improved significantly since surgery.  Imaging in February
    of 2005 showed no recurrent or residual disc extrusion.  The claimant's degenerative
05  disc disease was stable.

06  In January of 2005, the claimant was diagnosed with a meniscal tear in the left knee.
    The next month she underwent a left knee arthroscopy.  She testified at the hearig
07  [sic] that the surgery helped her symptoms.

08  The medical evidence establishes that the claimant has the following medically
    determinable impairments: peripheral neuropathy and affective disorder.

09

10  (AR 17-18, internal citations to record omitted.)  The ALJ also considered plaintiff's herniated

11  disc and left knee when evaluating her RFC:

12  The apparent inconsistency between the statements of the claimant and her son raises
    questions as to the severity of claimant's impairments.  Overall, her son's testimony
13  viewed in light of her statements leads to the conclusion that claimant embellishes her
    limitations and that she has overstated the extent her impairments have affected her
14  functioning.

15  The claimant testified that she has been going down hill since quitting her last job at
    Albertson's. . .  The surgery in July of 2004 did not improve her back.  She reported
16  that her doctor wanted to repeat the surgery.  The claimant complained of severe pain
    in her back, hips, and thighs.  She had to lie down to relieve the pain.  The claimant
17  reported left knee surgery [in] February 2005, which helped her symptoms.

18  . . .

19  I find considerable contradiction in the claimant's complaints, both to this agency and
    to her mental health providers, and her actual functioning.

20

21  (AR 20.)   Although the ALJ found plaintiff's complaints to be somewhat exaggerated, he

22  nevertheless incorporated plaintiff's complaints regarding her back and knee into his RFC

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01 assessment:

02   The claimant has the following residual functional capacity: she is able to lift and carry
     10 pounds, to stand and walk for 15-30 minutes at a time for a total of 5 hours in an
03   8-hour workday, sit for 60 min intervals for an 6-8 hour day with routine workplace
     break and stretch breaks.  She is unable to climb, balance, crawl, or kneel.  She can
04   occasionally stoop and crouch.

05 (AR 24.)

06      The claimant bears the burden of proof at step two.  To satisfy step two's requirement of

07 a severe impairment, the claimant must prove the physical or mental impairment by providing

08 medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own

09 statement of symptoms alone will not suffice.  *See* 20 C.F.R. § 416.908.  In this case, plaintiff

10 failed to carry her burden of proof regarding the herniated disc and left knee.  The mere listing of

11 surgeries to treat her herniated disc and left knee do not establish that those impairments had any

12 effect on plaintiff's ability to perform basic work activities.  If anything, those surgeries have been

13 shown to have improved her ability to perform basic work activities.

14      Finally, even if the ALJ erred in not analyzing plaintiff's musculoskeletal condition at step

15 two of the sequential analysis, such error would be harmless, given the extensive consideration of

16 plaintiff's herniated disc and left knee at step four in establishing her RFC.  *Lewis v. Astrue* ,

17 ___F.3d ___ , No. 04-17414, 2007 WL 2325018 at *2 (9th Cir. July 3, 2007, amended August

18 16, 2007). [4]  For this reason, and for the reasons described above, plaintiff fails to demonstrate

19 error with respect to the ALJ's consideration of her musculoskeletal condition.

20

21   [4] An unpublished decision in the same case addresses the consideration of other
   impairments at step two. *Lewis v. Astrue*, No. 04-17414, 2007 WL1975601 at *1 (9th Cir. July
22   3, 2007).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01

**CONCLUSION**

02    For the reasons set forth above, this matter should be AFFIRMED IN PART and

03 REMANDED IN PART for further administrative proceedings.  On remand, the ALJ should

04 perform a borderline age analysis and address Dr. Slack's 2005 opinions.

05    DATED this 20th day of September, 2007.

06

07
Mary Alice Theiler
United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13